[L. A. No. 3500. In Bank.—June 5, 1913.]

## SAN DIEGO AND ARIZONA RAILWAY COMPANY, Petitioner, v. STATE BOARD OF EQUALIZATION, Respondent.

TAXATION—OPERATIVE PROPERTY OF RAILROAD—STATE BOARD OF EQUALIZATION—CONCLUSIVENESS OF DETERMINATION—MANDAMUS TO COMPEL ASSESSMENT BY BOARD.—The decision of the state board of equalization upon the question whether property of a railroad is operative or nonoperative for purposes of taxation, within the meaning of the first and second paragraphs of section 14 of article XIII of the constitution, and the act of April 1, 1911 (Stats. 1911, p. 530), is not conculsive upon the courts in a proceeding by *mandamus* to compel the assessment of such property as operative, where there was no conflicting evidence, nor any dispute about the facts upon which its decision depended. In such a case, the decision of the board depends wholly upon a question of law, and if the facts show that the property is operative, *mandamus* will lie against the board to compel its assessment as such.

ID.—RAILROAD OPERATING PART OF LINE—REGULAR RUNNING OF MIXED TRAIN FOR FREIGHT AND PASSENGERS—PROPERTY USED IS OPERATIVE AND TAXABLE AS SUCH.—Where a railroad company has built fourteen miles of its line and has run thereon regularly, on. a fixed schedule time, each way, every day except Sundays, a mixed train carrying all freight and passengers offered by the public, at fixed rates, earning thereby over ten thousand dollars a year, and still continues such operation, the part of the line so operated is "operative property," within the meaning of section 2 of the act of April 1, 1911, and of section 14, article XIII of the constitution, and is taxable only for state purposes.

ID.—CONSTRUCTION OF ACT OF APRIL 1, 1911—COURTS MAY REVIEW DETERMINATION OF BOARD.—The provision of section 8 of the act of April 1, 1911, that the state board of equalization "shall finally determine the fact of such operation and the liability of any such company to be taxed upon its gross receipts," must be construed in connection with section 10 which declares that such determination shall be binding upon all parties "unless set aside by a court of competent jurisdiction." From this it follows that the determination of the board on the subject is not final, but may be reviewed and set aside in a proper action in any court having jurisdiction, if good cause exists therefor.

ID.—WHEN MANDAMUS LIES TO COMPEL ASSESSMENT BY BOARD.—*Mandamus* will lie to compel the state board of equalization to assess the operative property of a railroad whenever the time to elapse is

such that such remedy can be made available to protect the road against an unlawful imposition of taxes by county officials because of a wrongful decision of the board. Section 23 of the act of 1911, authorizing the taxpayer to sue for and recover taxes paid, if they have been unlawfully assessed and collected, is not an exclusive remedy.

ID.—"FULL OPERATION" OF RAILROAD—DEFINITION CONTAINED IN SECTION 468 OF CIVIL CODE—FORFEITURE.—Section 468 of the Civil Code, first enacted in 1872, defining when a railroad is to be deemed in "full operation" and providing for its forfeiture for failure to so keep it, has no application to the determination of the question whether or not the property of a railroad or other public service corporation is "operative," within the meaning of section 14 of article XIII of the constitution, and the act of 1911.

ID.—FORFEITURE OF RAILROAD PROPERTY—LIABILITY FOR TAXATION WHEN FORFEITURE HAS NOT BEEN AVAILED OF—MODE OF TAXATION.—Statutes providing for a forfeiture are not ordinarily to be extended by implication to qualify statutes upon other subjects. So long as the state does not avail itself of the forfeiture, but permits the railroad company to continue to carry on its business for compensation, the property owned, used and possessed by it must be taxed in the manner provided in the taxation laws relating to such property and to such companies. The act of 1911, defines for itself what shall be deemed "operative property" for taxation. This provision excludes the definition of "full operation" in section 468 of the Civil Code, and it must be given controlling effect whenever the right to taxation, the liability for taxation, or the mode of taxation, is involved.

APPLICATION for a Writ of Mandate directed to the State Board of Equalization.

The facts are stated in the opinion of the court.

L. L. Boone, for Petitioner.

U. S. Webb, Attorney-General, for Respondent.

SHAW, J.—*Mandamus* in this court to compel the state board of equalization to assess the property of the plaintiffs "exclusively for state purposes," as property "used exclusively in the operation" of its business in this state, under the scheme of taxation provided in the first and second paragraphs of section 14 of article XIII of the constitution.

The opening clause of that section declares that "taxes levied, assessed and collected as hereinafter provided upon railroads, . . . whether operated in one or more counties" and certain other kinds of business specified, "shall be entirely and exclusively for state purposes, and shall be levied, assessed and collected in the manner hereinafter provided." Paragraph (*a*) of the section provides that all railroad companies and other concerns named "shall annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, . . . and rights of way and other property, or any part thereof used exclusively in the operation of their business in this state," at a fixed percentage of "gross receipts from operation" thereof. It also declares that "such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated of such companies, except in certain cases not here involved. Paragraph (*f*) directs the legislature to pass all laws necessary to carry the provisions of the section into effect, to provide for a valuation and assessment of such property, and to prescribe the duties of the state board of equalization relating thereto.

The act of April 1, 1911 (Stats. 1911, p. 530), was enacted in obedience to this mandate. Section 7 declares what shall be deemed "gross receipts from operation" of such companies upon which the percentages are to be calculated, and specifies that it shall not include income from property not defined in the act as operative property.

Subdivision 1 of section 8 defines the term "operative property." It specifies in detail the things pertaining to a railroad system which are included in that class, declares that such property shall not be subject to taxation for ordinary county or other local purposes, and provides that when any piece of property is used partly in such operation and partly for other purposes, it shall be deemed operative property in proportion to the use in such operation. Subdivisions 2 and 3, so far as they are here material, are as follows:

"Any property of the classes mentioned in this section owned by a company constructing a new railroad . . . no part of which new road . . . is in operation and the same classes of property when held by an operating company solely for the construction of a new railroad . . . and not to be used for betterments, or additions to roads . . . already under opera-

tion, shall not be considered operative property and shall be subject to assessment and taxation for county, municipal and district purposes. The property of any company mentioned in this section shall be deemed to be in operation as to such part of the new road . . . as may be in use as soon as it offers and renders service to the public for compensation; provided, however, that the state board of equalization shall finally determine the fact of such operation and the liability of any such company to be taxed upon its gross receipts as provided in section 2 of this act.''

"3. When any property in this state belonging to a company of the classes named in this section is rendering no service to the public in this state, even though it may be rendering service to the public in some other state or states, such property shall not be considered as operative property, and shall be subject to assessment and taxation for county, municipal and district purposes.''

Section 9 requires each of such companies to make a report to the state board and to the county assessor of each county into which the service extends, on or before the first Monday in March of each year, giving a complete exhibit of all of its operative property in the state and in the respective counties, and the gross receipts from operation for the preceding calendar year.

Section 10 provides for the determination of the question whether or not any particular piece or parcel of the property, or part thereof, is "operative property.'' If any county assessor finds in the report furnished to him any property in his county which he regards as nonoperative, he shall, within thirty days after receiving the report, give notice to the company and the state board. If the state board finds property in such report which it regards as nonoperative, it may give notice to the company and the county assessor. If no agreement is reached, a hearing must be had before the board upon the matter, and the board must decide the question and enter its decision in its minutes. The decision shall be binding upon all parties "unless set aside by a court of competent jurisdiction.''

The plaintiff made and filed its annual reports in March, 1913, as provided by the act. The state board regarded the entire property as nonoperative and cited the plaintiff to a

hearing to be held by it on April 3, 1913. Upon that hearing the state board made a decision that the plaintiff's railroad was not in operation as contemplated by the constitutional provision aforesaid, and that all of its tangible property was nonoperative and subject to taxation for county and local purposes. The board thereupon refused to assess said property for state purposes. The assessor of San Diego County and the assessors of the several cities through which the road runs have listed said property for local assessment and taxation.

It may be conceded, solely for the purposes of this case, that the decision of the state board upon the question whether property is operative or nonoperative for purposes of taxation would be conclusive against a review by the courts, in the absence of fraud, where the decision depended solely on a question of fact upon which there was a substantial conflict in the evidence. Doubtless this would be so in every such case, so far as the remedy by *mandamus* is concerned. But in this case there is no conflicting evidence, nor any dispute about the facts. The decision depends wholly upon a question of law. Where this appears and the law enjoins upon a board, as a duty, an act, the performance of which is refused, and there is no plain, speedy, and adequate remedy in the ordinary course of law, *mandamus* will lie to compel performance. (Code Civ. Proc. secs. 1085, 1086.)

We think the state board of equalization erred in holding that the railroad is not in operation and that its property was nonoperative property subject to local taxation. The facts are as follows: The plaintiff company was organized to build a railroad from San Diego, California, to Yuma, Arizona. Its line, as located, crosses the boundary of Mexico at a point 14.26 miles south of San Diego. It has built its railroad from San Diego to the Mexican boundary. Ever since March 1, 1911, it has run a regular mixed train for the carriage of freight and passengers, upon a regular time schedule, every day except Sundays, each way, from San Diego to the Mexican line, and has carried all persons who desired to travel thereon and all freight offered for carriage, charging and receiving compensation therefor at regular fixed rates. It has not run a passenger coach upon its trains, but for the carriage and accommodation of passengers, it has provided and used a ca-

boose. The regular daily train carrying freight and passengers has also been used as a construction train to carry laborers constructing the road to and from the place of labor and to carry materials to be used in construction. The caboose is fitted with seats in the manner usual with such cars, and it has been sufficient to accommodate all persons who have applied for passage. The gross receipts from operation for the year 1912 were $11,024.61.

It thus appears that during the whole of the year 1912 and up to the date of the decision, the railroad company was offering and rendering to the public, for compensation, the service for which its road was designed, and all the service that the public demanded or required of it over said railroad. Its property, therefore, comes within the description given in subdivision 2 aforesaid. This subdivision relates to railroads in the course of construction, and it therefore controls, so far as the statute may control, the subject of classification for taxation. By that subdivision it is provided that the part of the new road which is in actual use by any company is "deemed to be in operation," so as to justify its classification as operative property, "as soon as it offers and renders service to the public for compensation." This the company was doing during the whole of the year 1912. The property also comes within the description of railroad property taxable only for state purposes as given in the constitution. The provision is that all the specified companies shall annually pay a tax upon the property enumerated or any part thereof, "used exclusively in the operation of their business in this state." The "business" here referred to is, of course, to be understood to be the public service for which the company was organized or in which it is engaged. The property involved here includes only that which is used in the operation of plaintiff's railroad in this state. It appears, therefore, that whether we take the statute or the constitution as the standard, the property is of the kind that is taxable exclusively for state purposes. It may be doubted whether any statutory definition of operative property would be valid if it was in conflict with the constitution, but inasmuch as this property comes within the terms of both, this question does not arise.

The provision of section 8 of the act of 1911, that the state board "shall finally determine the fact of such operation and

the liability of any such company to be taxed upon its gross receipts,'' must be taken in connection with section 10 which declares that such determination shall be binding upon all parties ''unless set aside by a court of competent jurisdiction.'' From this it follows that the determination of the state board of equalization on the subject is not final, but may be reviewed and set aside in a proper action in any court having jurisdiction, if good cause exists therefor. Section 23 of the act authorizes a taxpayer to sue for and recover taxes paid, if they have been unlawfully assessed and collected. In such an action the decision of the state board must necessarily be subject of review, clearly as to matters of law, and possibly as to matters of fact. This remedy does not purport to be exclusive. We perceive no reason why *mandamus* may not be resorted to whenever the time to elapse is such that it can be made available to protect the party against an unlawful imposition of taxes because of a wrongful decision of the state board. Such a proceeding is clearly a proceeding in ''a court of competent jurisdiction'' to decide the question.

It was claimed on the argument that the property of the plaintiff company is not ''operative property,'' within the meaning of the constitution or the act of 1911, because the road is not in ''full operation,'' within the meaning of that phrase as defined in section 468 of the Civil Code. That section is part of the title of the code relating to railroad corporations in general. It was first enacted in 1872. The main object of the section is to provide for a forfeiture of the right to operate a railroad, in case of failure to keep it in ''full operation.'' It declares that ''it shall be deemed'' in full operation when one passenger train or one mixed train is run over it once a day in each direction,'' with sufficient freight trains to accommodate the traffic. The claim is that there is a failure to run a train ''once a day'' in this case because of the fact that trains are not run on Sundays, and that a freight train with a caboose attached is not a ''mixed train.'' We are of the opinion that this section was not intended to apply, and has no application, to the determination of the question whether or not the property of a railroad or other public service corporation is ''operative,'' within the meaning of section 14 of article XIII of the constitution and the act of 1911. The clause merely defines what shall be deemed ''full opera-

tion" sufficient to escape forfeiture. No question of forfeiture is involved here. Statutes providing for a forfeiture are not ordinarily to be extended by implication to qualify statutes upon other subjects. So long as the state does not avail itself of the forfeiture, but permits the railroad company to continue to carry on its business for compensation, the property owned, used, and possessed by it must be taxed in the manner provided in the taxation laws relating to such property and to such companies. Moreover, the act of 1911 defines for itself what shall be deemed "operative property" for taxation. This provision excludes the definition of "full operation" in section 468 and it must be given controlling effect whenever the right to taxation, the liability for taxation, or the mode of taxation, is involved. We express no opinion upon the question whether or not the road would be considered in full operation in a case where section 468 was applicable.

Under the views here expressed, it is plain that the property of the plaintiff corporation is not taxable for local purposes, except for bonds and other special taxes provided for in the constitution, and that it should be assessed and taxed by the state board as operative property.

Let a writ of mandate issue directing the state board of equalization to assess as operative property of the San Diego and Arizona Railway Company all of the property owned and used by it in the operation of its road between Twenty-sixth and Main streets, in the city of San Diego, county of San Diego, state of California, and the Mexican boundary line, together with the switches and sidetracks pertaining thereto and connecting the same with other railroads.

Angellotti, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw J., concurred.