[S. F. No. 6601.    In Bank.—October 5, 1914.]

## LAKE TAHOE RAILWAY AND TRANSPORTATION COMPANY (a Corporation), Respondent, v. E. D. ROBERTS, as State Treasurer of the State of California, Appellant.

TAXATION—RAILROADS—PROPERTY USED EXCLUSIVELY IN OPERATION OF BUSINESS—STEAMBOATS NOT EXCLUSIVELY SO USED—TAX BASED ON GROSS REVENUE.—Section 14 of article XIII of the constitution, declaring that, based upon gross revenue, railroad companies shall pay to the state a tax upon certain enumerated properties "and other property, or any part thereof, used exclusively in the operation of their business in this state," does not authorize the imposition of such tax upon steamboats belonging to and operated by a railroad company on a lake at which its railroad line terminates, for the purpose of carrying goods and passengers between many different points thereon both within and without the state, if such steamboats are not used exclusively in the operation of its railroad business.

ID.—STEAMBOAT IS AN INDIVISIBLE FABRIC.—A steamboat in operation is a single, indivisible fabric, and if not used exclusively in the railroad business, it cannot be said that "any part thereof" is so used, within the meaning of that phrase as used in the constitution.

ID.—EARNINGS OF PROPERTY NOT EXCLUSIVELY USED IN BUSINESS OF RAILROAD.—Under such section of the constitution, only property used exclusively, or only a severable part of property used exclusively in the operation of the business of the railroad, should be included in the list of property whose sole and only tax is covered by the gross revenue percentage, and the earnings of other properties not so exclusively used in whole or in part are not an element in the admeasurement of this tax.

ID.—CONSTITUTIONAL PROVISION CONTROLS STATUTE.—If there is any difference in meaning between the language of the constitution and the proviso of the act of 1911 (Stats. 1911, chap. 335, subd. 8), defining operative property, the former must prevail.

ID.—STEAMBOATS AUGMENTING RAILROAD RECEIPTS.—It is immaterial that the operation by the railroad company of its steamboats on such lake stimulated its railroad receipts and induced travel over its rails that otherwise would not be had.

ID.—STEAMBOATS NOT FERRYBOATS.—Such steamboats are not ferryboats within the definition of section 3643 of the Political Code.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Raymond Benjamin, Chief Deputy Attorney-General, for Appellant.

Pillsbury, Madison & Sutro, Alfred Sutro, and A. D. Plaw, for Respondent.

HENSHAW, J.—This action was brought to recover taxes paid by plaintiff under protest as having been illegally exacted. Judgment passed for plaintiff and the defendant as state treasurer appeals.

Plaintiff is a California corporation and owns a railroad running from the town of Truckee to the town of Tahoe in the state of California. At Truckee its railroad connects with the Southern Pacific railroad. It also owns four steamers which are operated on Lake Tahoe and which carry goods and passengers between California points on the lake, between Nevada points on the lake, and between interstate points on the lake. It has a traffic arrangement with the Southern Pacific Company by which rail passengers of the latter may be conveyed over the railroad of the plaintiff and upon its steamers to designated points on Lake Tahoe in either California or Nevada. It therefore publishes and files, as required by law, with the railroad commission of the state of California and with the interstate commerce commission, official tariff sheets indicating these facts and specifying its charges for transportation. The steamers are not only owned by but operated by the corporation plaintiff. Forty-five per cent of the gross receipts from the operation of the steamers is obtained from purely local traffic. In the winter months the railroad entirely suspends operations, but the steamers continue in business carrying passengers, mail, freight, and express. No part of the receipts of the steamer transportation is received as compensation for railroad service, and conversely, no part of the receipts from the railroad transportation is received as compensation for steamer service.

As required by law the plaintiff filed with the state board of equalization its report of the matters and things required for purposes of taxation for the year 1912. Subsequently, pursuant to a request of the board and under protest, it furnished a statement of its gross receipts from the operation

of its steamers. This consisted of the total amount of receipts from the business of the steamers beginning and ending within the state of California, and a proportion of the interstate business based upon the relation of the mileage of such business conducted within the state to the entire mileage of the interstate business as provided in section 14 of article XIII of the constitution. The board of equalization levied a tax amounting to $908.68 against plaintiff upon the steamer earnings. Plaintiff paid this tax under protest and subsequently brought its action for the recovery thereof. The court found that the steamers were not used exclusively in the operation of the railroad business of the plaintiff, in whole or in part, and they were not and are not properly, reasonably, or at all necessary for the use by plaintiff exclusively in the operation of its railroad business. The court therefore concluded that the steamers were not subject to taxation under the gross revenue system but were subject at the hands of local assessors to *ad valorem* taxes which they had paid.

The question thus presented is an extremely simple one, resting as it does, solely upon the meaning of the language of section 14 of article XIII of the constitution, which declares, that based upon gross revenue railroad companies shall pay a tax to the state upon certain enumerated properties "and other property, or any part thereof, used exclusively in the operation of their business in this state." The brief statement of facts above set forth shows conclusively that the steamboats of the plaintiff were not used exclusively in their railroad business, and with equal conclusiveness it shows that no severable part of the steamers is used exclusively in the operation of the business, for manifestly a steamer in operation being a single, indivisible fabric, while it may be said that it is partly used for a given purpose, it cannot be said, as the constitution declares, that "any part thereof" is so used.

But appellant argues that the tax commission which framed this constitutional provision, and the legislature which proposed it, were composed of men of experience and knowledge "who ought not to be charged even by inference with having intended when indicating the character of the property to be taxed in the manner proposed, to have deliberately used language with a view to the result that would necessarily follow" from the most natural construction of that language above

indicated. Therefore, appellant argues that the language does not mean what it says but does mean that if any property is *partly* used for railroad purposes, that *partial* use to the extent of its value estimated upon the business' gross returns, is subject to be thus taxed. To the inference of the experience and intelligence of the tax commission and of the legislature we may give ready assent, but it is precisely for this reason and because these constitutional provisions were thus prepared with care by men understanding the plain use of plain language that the construction for which appellant contends may not be sustained. Appellant, while arguing for the intelligence of the framers of this constitutional provision, asks us to declare that their language does not mean what it says, but something radically and essentially different from what it says. Thus, if the framers of this provision had meant that any piece of property partially used in the railroad business should be partially taxed they would have said so. But what they have said is that only property exclusively used, or only some part of it exclusively used, should be so taxed, with the result that when not so exclusively used the old form of local taxation should still obtain. If confirmation of this meaning of plain language were required it will be found in the practical difficulties which would arise from the construction contended for by appellant, difficulties which, if that construction was ever contemplated by the framers of the constitutional provision, they would have removed by provisions of law. To illustrate, if this substituted percentage tax based on revenue is to apply to a single piece of property partly used for railroad purposes, that indivisible portion of it not so partly used must be subject to local taxation by local assessors under the strict *ad valorem* tax, or it escapes taxation altogether. How shall a local assessor assess a portion of a steamboat? What portion shall he assess and what shall be the *ad valorem* value placed upon the portion which he does assess? All these would be practical questions under appellant's contention and would require answer at the hands of the law. The fact that these manifest contingencies have not been provided for by law is additional evidence that the framers of the constitution meant what they said,—namely, that only property used exclusively, or only a severable part of property used exclusively in the operation of the business of the company, should be included in the list of property

whose sole and only tax is covered by the gross revenue percentage, and that the earnings of other properties not so exclusively used in whole or in part are not an element in the admeasurement of this tax.

The cases uniformly so hold. Thus, in *Chicago B. & Q. R. Co.* v. *Rhein,* 135 Iowa, 404, [112 N. W. 823], the statute declared that the railway property taxed should include all property "real or personal, exclusively used in the operation of such railway." The supreme court held that the telegraph lines of the railroad which were used in the ordinary transaction of its railroad business but which were also leased to the Western Union Telegraph Company were not exclusively used in the railroad business and therefore were not within the purview of the statute. In *Herter* v. *Chicago, etc. Ry. Co.,* 114 Iowa, 330, [86 N. W. 266], it was decided that while grain elevators, operated by a railroad, were necessary and proper in the conduct of the road, they were not exclusively used in such conduct within the taxing statute if they were used by others. And to like effect is the decision of the supreme court of Illinois in *Illinois Central R. Co.* v. *People,* 119 Ill. 137, [6 N. E. 451].

Further, it is argued that the steamboats are a necessary part of plaintiff's business and "to say that they are not a necessary part is to say that plaintiff would carry as many passengers over its rails to Tahoe if no way existed for those passengers to reach other points on the lake besides Tahoe. We doubt if any one would deny that the operation of the steamboats on the lake stimulates and increases plaintiff's rail receipts and induces travel over its rails that would not be gained if Tahoe was the only destination." All this may be conceded but it is in no sense determinative of the question here, which is one of exclusive use. Thus, in *Illinois Central R. Co.* v. *Irvin,* 72 Ill. 452, where the precise question was whether a steamboat owned by a railroad was railroad property, it was said that "The only purpose and use of the steamboat is to facilitate and extend appellant's business as a common carrier to and from points south of Cairo," and the court declared that the boat was not railroad property and that the fact that the use of it added greatly to the revenue of the company was not relevant to prove that the boat was railroad property. In the same way the supreme court of Minnesota in *State* v. *St. Paul M. & M. Ry. Co.,* 42

Minn. 238, [44 N. W. 63], decided that a hotel owned by the railroad company on the shores of Lake Minnetonka, over ninety per cent of the guests of which came over defendant's railroad and which thus largely contributed to its business and income, bore no other relation to the operation of the railroad than did any other enterprise which might tend to improve the latter's business. And to the same effect is *Milwaukee & St. Paul Ry. Co.* v. *Board of Supervisors*, 29 Wis. 116.

We need not be at pains to discuss the proviso in the act of the legislature of 1911 (Stats. 1911, chap. 335, subd. 8), which defines operative property. If the definition is in harmony with the language of the constitution it does not affect the discussion hereinbefore had. If the definition does violence to the language of the constitution to that extent it cannot be upheld for the definition of the constitution itself must prevail. (*San Diego Ry. Co.* v. *State Board of Equalization*, 165 Cal. 564, [132 Pac. 1044].)

That these steamers may not be classed as ferryboats under section 3643 of the Political Code is manifest from a reading of the section, as well as from the authority of *Illinois Central Ry. Co.* v. *Irvin*, 72 Ill. 452.

For these reasons the judgment appealed from is affirmed.

Lorigan, J., Sloss, J., Shaw, J., and Melvin, J., concurred.