[Civ. No. 3058.   Third Appellate District.—February 15, 1926.]

THE NEVADA–CALIFORNIA POWER COMPANY (a Corporation) et al., Appellants, v. JAMES BORLAND et al., Respondents.

[1] PUBLIC UTILITIES—TAXATION—GAS AND ELECTRIC COMPANIES—PUBLIC SERVICE—CONSTITUTIONAL LAW.—Subdivision a, section 14, of article XIII, of the constitution, relating to taxes on companies engaged in the transmission or sale of gas or electricity, is not applicable to corporations which render no public service wholly within the state or "partly within or partly without this state," since they are not public utilities within the meaning of said subdivision, having devoted no property to a public use in this state.

[2] ID. — PERFORMANCE OF SERVICE IN SISTER STATE — CHARACTER OF SERVICE—INAPPLICABILITY OF SUBDIVISION A, SECTION 14, ARTICLE XIII, CONSTITUTION.—The applicability of subdivision a, section 14, article XIII, of the constitution must be determined by the character of service performed in this state, and the fact that corporations are public utilities in a sister state is immaterial as affecting the character of the service they perform in this state, and the provisions of said subdivision have no application to the taxation of their property.

(1) 32 *Cyc.,* p. 1255, n. 52 New.   (2) 32 *Cyc.,* p. 1255, n. 52 New.

APPEAL from a judgment of the Superior Court of Mono County. Wm. D. Dehy, Judge. Affirmed.

The facts are stated in the opinion of the court.

I. B. Potter and Henry W. Coil for Appellants.

Charles S. Hayes and Platt & Sanford for Respondents.

FINCH, P. J.—Plaintiffs brought this action to enjoin the execution of a deed after the sale of their property for nonpayment of county taxes thereon. Defendants were given judgment and the plaintiffs have appealed therefrom. "The plaintiffs herein were and are of the same character and have at all times during their respective ownerships operated the properties in the same manner and for the same purposes and in the same business." No distinction, therefore, need be made between them and they, or either of them, will be referred to as plaintiffs or appellants.

"The property involved herein embraces a complete hydro-electric generating plant consisting of power house, pipe line, penstock, dam, reservoir and appurtenant machinery and structures, and the land on which the same are situated, together with water and water rights for the operation of said plant; also an electrical transmission line 22 miles in length extending from said power house to the Nevada state line and a second transmission line 55 miles in length extending from said power house to the south boundary of Mono County." It was stipulated at the trial that the plaintiffs have at all times generated electricity at their plant in Mono County and transmitted it thence "through the state of Cali-

fornia into the state of Nevada''; that they did not ''generate, transmit or sell . . . electric power for use in the state of California,'' but ''sold and distributed'' the same ''exclusively in the state of Nevada''; that each of the plaintiffs ''operated as a public service corporation in Nevada and as such was under the jurisdiction of the Public Service Commission of Nevada,'' and that neither of them was at any time ''a public service company nor a public utility in the state of California.'' The articles of incorporation of the plaintiffs, after describing their powers and purposes, provide ''that the foregoing objects shall be limited so that the corporation shall not do a public utility business in the state of California or serve the public in any way within the territorial limits of said state,'' and that the business of the corporation shall be carried on in the state of Nevada and also in the state of California, subject, however, to the limitation that they shall not do a ''public utility business in California.''

''Complying or attempting to comply with the provisions of section 14 of article XIII of the Constitution and the act of the Legislature passed pursuant thereto, . . . plaintiff companies did . . . on the 15th day of March, 1916, file with the State Board of Equalization duly verified reports . . . showing in detail all of the information required by said constitutional and statutory provisions. . . . These reports contained the express statement that 'no business in the sale of electricity was transacted in California during the year 1915.' . . . The companies however did not file any duplicate of these reports with the tax assessor of Mono County, at the time of filing the reports with the state board, . . . and the copies were not received by the tax assessor until about the 29th or 30th day of June, 1916. . . . The State Board of Equalization . . . assessed taxes for said year 1916 upon the basis of said reports. . . . The plaintiffs in due time paid the state treasurer the amount of the taxes so levied and assessed for state purposes. . . . The county assessor of Mono County also assessed the above described property on the county assessment rolls and listed the same in the tax assessment book of said county. . . . No part of this tax has been paid.'' The properties ''were advertised in the delinquent tax list for the year 1917, and at the June sale of that year declared 'Sold to the State' for the taxes for

the year 1916. At the expiration of five years, that is at the June, 1922, sale, it would become the duty of the tax collector to issue a deed therefor to the state or to such other person as might bid in the property. This action was commenced prior to the date for the issue of such deed.'' The foregoing quotations are taken from appellant's opening brief, which contains a fair statement of the facts involved in the case.

Respondents contend that the failure of appellants to file with the county assessor a copy of their report to the state board estops them from attacking the county assessment, citing *Great Western P. Co.* v. *City of Oakland*, 189 Cal. 649 [209 Pac. 553], and *Pacific Electric Ry. Co.* v. *Rolkin,* 164 Cal. 154 [128 Pac. 20]. The contention need not be considered, however, because the grounds urged by appellants for a reversal of the judgment are untenable.

Article XIII, section 14, subdivision a, of the constitution provides: ''All companies engaged in the transmission or sale of gas or electricity shall annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way, and other property, or any part thereof used exclusively in the operation of their business in this state, computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies, and each thereof within this state. When such companies are operating partly within and partly without this state, the gross receipts within this state shall be deemed to be all receipts on business beginning and ending within the state, and a proportion, based upon the proportion of the mileage within this state to the entire mileage over which such business is done, of receipts on all business passing through, into, or out of this state. . . . Such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated of such companies except as otherwise in this section provided.''

Chapter 335, section 8, subdivision 3, of the Statutes of 1911, in force at the time of the assessments involved herein, provided: ''When any property in this state belonging to a company of the classes named in this section is rendering no service to the public in this state, even though it may be rendering service to the public in some other state or states,

such property shall not be considered as operative property, and shall be subject to assessment and taxation for county, municipal, and district purposes." (Stats. 1911, p. 536.)

Appellants contend that the foregoing statutory definition of "operative property" is in conflict with the provisions of the constitution herein quoted, citing *Lake Tahoe Ry. etc. Co.* v. *Roberts,* 168 Cal. 551, 556 [Ann. Cas. 1916E, 1196, 143 Pac. 786], and *San Diego etc. Ry. Co.* v. *State Board,* 165 Cal. 560, 565 [132 Pac. 1044, 1047]. In the latter case it is said: "It may be doubted whether any statutory definition of operative property would be valid if it was in conflict with the constitution," and in the former "if the definition is in harmony with the language of the constitution it does not affect the discussion hereinbefore had. If the definition does violence to the language of the constitution to that extent it cannot be upheld for the definition of the constitution itself must prevail." The statute under discussion was enacted immediately after the adoption of the constitutional amendment relating to the taxation of corporations and is, therefore, to be given consideration as a contemporaneous legislative construction of the amendment, although not binding upon the courts. The decisions of the courts, however, are in harmony with such legislative construction.

In *Story* v. *Richardson,* 186 Cal. 162, 166 [18 A. L. R. 750, 198 Pac. 1057, 1059], it is said: "It is clear both from the report of the commission proposing the amendment and the arguments advanced to those voting upon the adoption of the amendment, as well as from the nature of the amendment, that the provision for taxation in proportion to gross receipts is applicable only to public utilities. . . . 'Even a constitutional declaration cannot transform a private enterprise or a part thereof into a public utility and thus take property for public use without condemnation and payment.' (*Del Mar Water etc. Co.* v. *Eshelman,* 167 Cal. 666, 680 [140 Pac. 591, 596].) Consequently, it has been held that the definitions of public utilities contained in the Public Utilities Act must be construed as applying only to such properties as have in fact been devoted to a public use, and not as an effort to impress with a public use properties which have not been devoted thereto."

In *Transcontinental Tel. Co.* v. *Neylan,* 34 Cal. App. 379, 382 [167 Pac. 541, 542], it is said: "It is only when such a corporation is operating within this state and rendering public service within this state, because of which operation and business it earns gross proceeds upon which the percentage tax can be based, that such a tax so paid 'is in lieu of all other taxes and licenses, state, county, and municipal.'"

[1]   The plaintiffs rendered no public service wholly within the state or "partly within and partly without this state," and hence the constitutional amendment is not applicable to the taxation of their property. It is clear that they are not public utilities within the meaning of that amendment. They have devoted no property to a public use in this state. Even the constitutional definition of a public utility "must be construed as applying only to such properties as have in fact been devoted to a public use." (*Allen* v. *Railroad Com.,* 179 Cal. 68, 89 [8 A. L. R. 249, 175 Pac. 466, 474].)

[2]   The fact that the plaintiffs are public utilities in the state of Nevada is immaterial as affecting the character of the service they perform in this state. (*Thayer* v. *California Development Co.,* 164 Cal. 117, 133 [128 Pac. 21].) The applicability of the constitutional amendment must be determined by the character of service performed in this state. Their business in this state is of a private character, the generation of electric power to be devoted to a public use exclusively in the state of Nevada. The case of *Grover Irr. etc. Co.* v. *Lovella Ditch etc. Co.,* 21 Wyo. 204 [Ann. Cas. 1915D, 1207, L. R. A. 1916C, 1275, 131 Pac. 43], involved the question of a corporation's right to condemn land in Wyoming for the location and maintenance of a headgate and part of an irrigating canal for the irrigation of lands situated wholly within the state of Colorado. The court said: "It is a familiar elementary principle that the laws of a state have no extraterritorial effect. And it is not necessary for a state statute to contain words expressly confining its operation within the state. That it is so confined is generally understood. It is therefore not a strained construction of the statute conferring authority to appropriate and condemn land for a right of way for a ditch for agricultural purposes, that it is intended to be confined not only to a right of way within the state, but as well to agricultural purposes within the state." The subject is so fully con-

sidered in the opinion and in the notes following it that no further discussion thereof is deemed necessary. Of course, if the corporation had sought to condemn a right of way for the purpose of performing a public service in both states, an essentially different question would have been presented. Since the constitutional amendment is applicable only to public utilities and the plaintiffs are not public utilities in this state, the provisions of the amendment have no application to the taxation of their property.

The judgment is affirmed.

Pullen, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 15, 1926.