[S. F. No. 9823. In Bank.—September 22, 1922.]

GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation), Appellant, v. CITY OF OAKLAND (a Municipal Corporation), Respondent.

[1] Taxation — Operative Property of Corporation — Report to State—Claim of Inclusion of Nonoperative Property—Duty of Assessor—Failure to Perform—Effect of.—The provision of section 10 of the act of the legislature (Stats. 1911, p. 530) adopted to carry into effect the provisions of section 14 of article XIII of the constitution separating state and local taxation, that

when the assessor of any county finds in the report of operative property in his county made to the state by a public service corporation, any property which he regards as nonoperative property, he shall within thirty days thereafter notify the state board of equalization of his claim, and that such board shall investigate and determine the proper classification of such property, is mandatory, and the failure to file such notice is jurisdictional in so far as the right to thereafter claim that such property is nonoperative property or to assess the same locally as such is concerned.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Reversed.

The facts are stated in the opinion of the court.

Guy C. Earl, W. H. Spaulding and Chaffee E. Hall for Appellant.

Leon E. Gray and Markell C. Baer for Respondent.

RICHARDS, J., *pro tem.*—This appeal is from a judgment in favor of the defendant, a general demurrer to the complaint as amended having been sustained. The action was one brought by the plaintiff to recover certain taxes paid by it, under protest, to the defendant.

The complaint alleged that the defendant was and is a corporation engaged in the transmission and sale of electricity, and in the sale of steam for heat as a by-product of its said business of transmitting and selling electricity. That during the year 1919 the plaintiff owned and operated in the city of Oakland a certain steam heating plant, which, during the whole of said year was used and operated primarily for the generation, transmission and sale of electricity, but secondly and as a by-product of said property, said plaintiff during said year sold and distributed the steam generated by said property after the same had been used for generating electricity for said purposes, but that no steam was generated or used by said plaintiff during said year for distribution or sale for heat or otherwise or at all, except only as such by-product; that on or about the 9th day of March, 1920, pursuant to the order of the state board of equalization and within the time provided thereby, the plaintiff made and filed with the said state

board of equalization its report to said board, which said
report set forth in detail all the property owned by said
plaintiff in the said city of Oakland, particularly specifying
and classifying its said property as operative property and
nonoperative property, respectively; that in such report the
steam generating plant of the plaintiff in said city of Oak-
land was specified and classified as operative property, and
as such subject to assessment and taxes for state purposes
by and through the state board of equalization; that a copy
of said report was immediately thereafter furnished to the
assessor of the city of Oakland under the provisions of sub-
division 2 of section 9 of the act of the legislature providing
for the separation of state from local taxation, approved
April 1, 1911, and pursuant to which act said report had
been made.   That the said assessor of the city of Oakland
never gave to the state board of equalization the notice re-
quired by the provisions of said act, to the effect that the
plaintiff had included in its said report as operatve property
any property which said assessor regarded as nonoperative
property, as defined by the terms of said act, and, as such,
subject to local taxation; but on the contrary, after the re-'
ceipt of said report and during the month of July, 1920,
notified the plaintiff that he had assessed its said steam heat-'
ing plant within the said city of Oakland as nonoperative
property at the valuation of $50,000, and that a tax upon
said property had been levied by the said city of Oakland
for the fiscal year beginning July 1, 1920, in the sum of
$1,220.   The said plaintiff, claiming said assessment to be
void, upon the several grounds specified in its protest against
the payment of said taxes, paid the same under such protest
and thereafter commenced this action to recover the sum
so paid.   The trial court having sustained a demurrer to
its complaint setting forth with much of detail the fore-
going facts, and having entered its judgment in the defend-
ant's favor upon the plaintiff's failure to further amend its
complaint, it has taken and now prosecutes its appeal from
said judgment.

The provisions of the state constitution and of the stat-
utes adopted in pursuance thereof providing for and regu-
lating state and local taxation respectively of corporate
properties, which are necessary to be considered for the pur-
pose of determining the present appeal are substantially as

follows: In the year 1910 a new section numbered section 14 was added by amendment to article XIII of the state constitution which engrafted thereon a new system for state and local taxation of properties of corporations. It provided for the annual payment to the state by certain enumerated corporations or companies, including all companies engaged in the transmission and sale of gas or electricity, of taxes upon their properties "used exclusively in the operation of their business" to be computed upon certain percentages of the gross receipts from the operation of such companies, which taxes were to be in lieu of all other taxes and licenses, state, county or municipal, upon such property. The legislature was, by the terms of said amendment to the constitution, instructed to pass all laws necessary to carry its provisions into effect. Pursuant to said instruction the state legislature at its succeeding session adopted an act entitled "An Act to Carry into effect the provisions of Section 14 of Article XIII of the Constitution of the State of California, as said Constitution was amended November 8, 1910, providing for the separation of state from local taxation and providing for the taxation of public service and other corporations" etc. (Stats. 1911, p. 530.) By the terms of section 8 of said act it was provided as follows:

"(1) The term 'operative property' as used in this act shall include . . . (e) In the case of companies engaged in the transmission or sale of gas or electricity: The franchises, towers, poles, wires, pipes, canals, tunnels, ditches, flumes, aqueducts, conduits, rights of way, dams, reservoirs, water and water rights used exclusively in the business of the transmission or sale of gas or electricity; transformers, substations, gas-holders, gas and electric generators, switches, switchboards, meters, electrical and gas appliances, oil tanks, power plants, power houses, and other buildings and structures used in the operation of the business of the transmission or sale of gas or electricity and so much of the land on which said buildings and structures are situate as may be required for the convenient use and operation of said buildings. *Provided,* that the operative property of the companies enumerated in this section, shall also include any other property not above enumerated that may be reasonably necessary for use by said companies ex-

clusively in the operation and conduct of the particular kinds of business enumerated in section two of this act. The operative property mentioned in subdivision (a), (b), (c), (d), and (e) of this section shall not be subject to taxation for county, municipal, or district purposes except as otherwise provided for °in the constitution and laws of this state.''

By the terms of subdivision 4 of said section 8 of said act it was provided that:

''The state board of equalization shall have power to make rules and issue instructions not inconsistent with the constitution and laws of this state for the guidance of assessors in determining what is operative property and what is nonoperative property of companies named in this section.''

By the terms of subdivision 2 of section 9 of said act it was provided:

''Each of the companies mentioned in section two of this act shall report, in such detail as the state board of equalization shall prescribe, all of its property in this state which comes under the definition of operative property in section eight of this act. When any such company operates both within and without this state it shall report the mileage over which it operates both within and without this state. It shall also report the location of said property within this state by counties, cities and counties, municipalities, and districts, in such manner and in such detail as said board of equalization shall prescribe. It shall also, at the same time, furnish a duplicate of the report covering so much of said property as is located in any county, city and county, municipality, or district, to the assessor of the county, city and county, city, or district in which such property is located.''

By the terms of section 10 of the said act it was provided:

''If any assessor finds in the report of the operative property in his county, city and county, municipality, or district, furnished to him by any of the companies as required in section nine of this act, any piece or parcel of property which he regards as nonoperative property, or partially operative and partially nonoperative, he shall, within thirty days after receiving such report, notify the state board of equalization thereof by mail, which notice shall contain a general description of the property and the assessor's reasons for regarding the same as nonoperative property. He shall also mail a copy

of the notice to the company whose property is involved. The said board shall investigate the nature of the property and its use, and, if an agreement between the said board, the assessor and the company as to the proper classification of such property cannot be reached, then the said board shall, under such rules of notice as it may deem reasonable, set a date for a hearing, at which the assessor and the company may be present or represented. At such hearing the board shall, from the evidence presented and from the best information it can obtain, decide the matter in dispute, and determine whether such property is operative or nonoperative or in what proportion operative and in what proportion nonoperative. The said board shall enter its decision in its minutes, and shall send a copy thereof to the assessor and the company, and also to the proper officer of any city affected thereby. Said decision shall be binding upon all parties, the state, the county, city and county, municipality, or district, and the company, unless set aside by a court of competent jurisdiction, and each such assessor must note the decision on his assessment-roll, and must assess such property accordingly.''

The foregoing provisions of the act of 1911 were incorporated in substantial form in the Political Code in the · year 1917, and appear therein in section 3664 et seq. thereof. (Stats. 1917, p. 336.)

The respondent herein in support of the action of the trial court sustaining its demurrer to the plaintiff's complaint and of the judgment based thereon, makes three main contentions. First, that the said steam heating plant of the plaintiff is not ''operative property'' within the intent and meaning of the foregoing provisions of the constitution providing for state taxation of property of gas and electric companies, ''used exclusively in the operation of their business,'' and hence is the proper subject of local taxation. Second, that the terms of the statute above set forth providing that when the assessor finds in the report which the corporation has made to the state board of equalization and of which he has been furnished a copy, any piece of property which he regards as nonoperative property or as partially operative and partially nonoperative property, he shall, within a specified period notify the said board and said corporation of his reasons for regarding the same as non-

operative property, which notification shall cause said board to institute an investigation into the nature and use of said property upon the hearing of which it shall be determined by said board whether such property is operative or non-operative property, which determination shall be binding upon all parties, is a merely permissive proceeding on the part of said assessor and that his failure to pursue the same is a mere irregularity which did not render the tax in question void. Third, that if such procedure is not merely permissive in so far as the assessor is concerned, the provision of the statute requiring it is unconstitutional and void.

As to the first of these contentions it may be said that the question as to whether or not the said steam heating plant of the plaintiff, used as it is alleged to be, primarily for the generation, transmission and sale of electricity and after which use the steam heat thereby developed being thereafter sold and distributed as a by-product, is to be classed as operative or nonoperative property within the intent and meaning of the state constitution, is an interesting inquiry and is one not altogether covered or concluded by the previous decisions of this court in the cases of *Lake Tahoe Ry. Co.* v. *Roberts*, 168 Cal. 551 [Ann. Cas. 1916E, 1196, 143 Pac. 786], and *Southern Pacific Co.* v. *Richardson*, 181 Cal. 280 [184 Pac. 3] ; it is nevertheless a question which is not presented to this court for final determination in this case; and this by reason of the conclusion we have arrived at with respect to the second contention of the respondent herein as above set forth. It is our opinion that the determination of the question as to whether any certain property of a public service company is or is not subject to state taxation as ''operative property used exclusively in its business'' is one which is committed in the first instance to the state board of equalization under and by virtue of the procedure outlined in section 10 of the act of 1911 above quoted. In support of this conclusion it may be said that the people of the State of California in adopting the amendment to the constitution in the year 1910 above referred to, intended to work a radical change in the method of deriving revenues for public purposes through state and local taxation through a separation of those properties which should be subject to state taxation from those which should be subject to local taxation. This change was to

be effectuated chiefly with relation to the properties of corporations of the class commonly known as public service corporations. It was expressly provided in said amendment to the constitution that the properties of such corporations used exclusively in the operation of their business should be subjected solely to state taxation through the method provided for in said amendment; and in order to accomplish this result the legislature was expressly directed to pass such laws as should be necessary to carry into effect the provisions of said amendment to the constitution and to provide for a valuation and assessment of the property thus to be subjected to state taxation and to prescribe the duties of the state board of equalization with respect thereto. In obedience to this direction the legislature of 1911 undertook to frame and adopt the act of that year and which as we have seen expressed in its title its purpose to be that of "providing for the separation of state from local taxation." In drawing the line of demarcation between those properties of public service corporations which, if used exclusively in their business should, under the terms of said provision of the constitution, be subjected to state taxation, and those of their properties which if not thus used should remain subject to local taxation, it requires no very close or intimate acquaintance with the business and properties of such corporations to perceive that there would be properties thereof which from their nature and uses would lie close to or even across the line of such demarcation; and it was the evident design of the legislature in the adoption of subdivision 2 of section 9 of said act, and also of section 10 thereof to provide a method of procedure for the determination of any question which might arise as to whether certain of the properties of such corporations did or did not come within the designation of "operative properties" as defined in the constitution and statute, for the purpose of subjecting such property to state or local taxation. The method thus provided was that of requiring each of such corporations to render a report to the state board of equalization in such detail as said board should prescribe, of all of its property coming within the definition of "operative property" as defined in section 8 of said act. A duplicate of such report was also required to be furnished to the assessor of the county, city

and county, city or district in which such property was located, upon receipt of which, such assessor, if he found therein any property within his jurisdiction which he regarded as nonoperative property or partially operative or partially nonoperative property "shall within thirty days after receiving such report notify the state board of equalization thereof by mail, which notice shall contain a general description of the property and the assessor's reasons for regarding the same as nonoperative property. He shall also mail a copy of the notice to the company whose property is involved." It would seem to be obvious that the purpose of these provisions in said act was that of preventing clashes between the state board of equalization and local assessors with respect to what property of such corporations was subject to their respective jurisdictions for the purposes of state or local taxation, and thus avoiding double taxation; and this is made even more apparent by the succeeding provisions of section 10 of said act which provided for an investigation by the board of equalization to be held for the purposes of determining whether the property in question is or is not operative property and which further provides that such determination when made "shall be binding upon all parties, the state, the county, city and county, municipality or district, and the company, unless set aside by a court of competent jurisdiction; and each such assessor must note the decision on his assessment-roll and must assess such property accordingly." [1] In view of the foregoing express provisions of section 10 of the act of 1911 we are constrained to hold that the contention of the respondent is not well founded, wherein it insists that the requirement therein that the assessor shall give notice of his objection to the particular piece of property in the report of the public service corporation to the state board of equalization as "operative property" is not mandatory but merely permissive, and that such assessor is not required to give such notice but may proceed to assess such property as nonoperative property if he so regards it, without giving any such notice and without any hearing or determination of the question before the state board of equalization. This court has, in substance, held otherwise in the case of *Pacific Electric Railway Co.* v. *Rolkin,* 164 Cal. 154 [128 Pac. 20], in construing these very pro-

visions of the act in question. In that case the failure of the city assessor of Los Angeles to file with the state board of equalization within the time prescribed in said act, his protest against the taxation of the property in question in that case as operative property of the Pacific Electric Railway Company, was held jurisdictional and a later filing of such protest by him ineffectual to prevent the said board from placing such property upon its roll as operative property; and that its action in so doing was as valid as if no such belated protest had been filed. In harmony with these views we now hold that the failure of the assessor of the city of Oakland to file with the state board of equalization the required notice of his claim that the property in question was nonoperative property of the plaintiff was jurisdictional in so far as his right to thereafter claim that said property was nonoperative property, or to assess the same locally as such was concerned. His subsequent action in attempting to assess said property as nonoperative property of such corporation was not, as the respondent contends, a mere irregularity, but on the contrary was an attempt to levy a local assessment upon property of the corporation, the status of which had, under the procedure provided in said act, been fixed for that fiscal year as operative property thereof, subject only to state taxation. The attempt of the assessor to thereafter subject the same to local taxation was therefore utterly void. The respondent, however, contends that to so hold is to render the act of 1911 unconstitutional as permitting the assessment of nonoperative property by the state board of equalization and as relieving such property from local taxation. This contention, however, begs the question at issue by assuming that the property in question is nonoperative property, an assumption which may not be made by the assessor or his principal, the respondent herein, after the valid assessment of such property as operative property by the state following the failure of said assessor to present that issue to the state board of equalization by filing the notice and protest required by law. The cases of *Lake Tahoe Ry. Co.* v. *Roberts, supra,* and *Pullman Co.* v. *Richardson,* 185 Cal. 484 [197 Pac. 346], cited by respondent in aid of this contention do not support the same, since those cases arose out of controversies between the public service corporations, parties thereto, and the state, involving the

assessment by the latter of said properties of said corporations alleged by them to be nonoperative property, and hence not subject to state taxation. .The discussion of this question is foreclosed in the instant case by the failure of the city assessor to present it in the proper forum and at the proper time.

The respondent makes certain other contentions touching the sufficiency of the plaintiff's complaint which we do not deem of sufficient merit to require separate consideration.

The judgment is reversed with instructions to the trial court to overrule the demurrer to the plaintiff's complaint.

Waste, J., Lennon, J., Lawlor, J., Myers, J., *pro tem.,* and Sloane J., concurred.

Rehearing denied.

All the Justices present concurred.

Richards, J., *pro tem.,* was acting.