[S. F. No. 10925. In Bank.—May 4, 1925.]

## GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation), Appellant, v. CITY OF OAKLAND (a Municipal Corporation), Respondent.

[1] TAXATION—CORPORATIONS—ELECTRIC COMPANIES.—The tax by the state on the property of corporations, such as companies engaged in the sale and transmission of electricity, used exclusively in the operation of their business in this state is in lieu of all other taxes, state, county, and municipal, except as provided in section 14 of article XIII of the constitution.

[2] ID.—FURNISHING ASSESSOR WITH INFORMATION — SECTION 3665c, POLITICAL CODE—PURPOSE.—The reason for the provision in section 3665c of the Political Code, requiring utility companies to furnish the local assessor with information concerning property of the company within the jurisdiction of that official, is that if the assessor finds in the report of property in his municipality, claimed to be operative, any piece or parcel which he regards as nonoperative, or partially nonoperative, he shall within thirty days after receiving such report, notify the state board of equalization thereof, and give the reasons for his opinion.

[3] ID. — CHARACTER OF PROPERTY — DETERMINATION OF BOARD OF EQUALIZATION.—The state board of equalization, upon an in-

---

1.    See 24 Cal. Jur. 399.
2.    See 24 Cal. Jur. 408.

vestigation of the property of a utility corporation and its use, if an agreement between the board or assessor and company as to the proper classification cannot be reached, must provide for a hearing before it, at which hearing it must determine whether such property is operative or nonoperative, and its decision is binding upon all parties unless set aside by a court of competent jurisdiction, and the assessor must assess the property according to such decision.

[4] ID. — WORDS AND PHRASES — DUPLICATE. — The word "duplicate" means that which is double, or twice made; an original instrument repeated; a document which is defined to be the copy of the thing; but, though generally a copy, a duplicate differs from a mere copy in having all the validity of an original.

[5] ID. — REPORT OF PROPERTY—DUPLICATE TO ASSESSOR—COMPLIANCE WITH STATUTE.—Where the matter appearing on sheets of paper sent to an assessor, descriptive of the operative property of a utility company within the state, was first typewritten on stencil sheets and run off on the mimeograph, many copies being run off from each sheet, including one for the state board of equalization, and one for each local assessor, and the mimeograph copies so made were duplicates of the same respective pages actually sent to the state board of equalization, there was a substantial, if not literal, furnishing to the assessor of a duplicate of the report sent to the state board of equalization.

[6] ID.—REPORT TO ASSESSOR—CHARACTER OF.—No further information is required to be given to a local assessor, in the matter of taxing the property of a public utility company, than such information as will apprise him of the intention of the company to claim that such property, or some part of it, is operative, and to give him opportunity to make a claim before the state board of equalization that, as a fact, the property is nonoperative, and therefore within his jurisdiction for assessing purposes.

[7] ID.—INFORMATION AS TO OPERATIVE PROPERTY—DUTY OF ASSESSOR. Where an assessor is expressly told that maps and papers are sent to him by a utility company as a statement of its operative properties within his jurisdiction and that the maps show the location of such property and that the statement and maps are identical with those sent to the state board of equalization covering his district and are sent to him at the request of said board, it is his duty to take steps to have the claim made by the company heard and determined as provided by the statute, and failing to do so he cannot assess the property as nonoperative property.

---

(1) 37 Cyc., p. 820, n. 85.   (2) 37 Cyc., p. 1020, n. 11.   (3) 37 Cyc., p. 1108, n. 62.   (4) 19 C. J., p. 836, n. 49.   (5) 37 Cyc., p. 992, n. 21.   (6) 37 Cyc., p. 993, n. 23.   (7) 37 Cyc., p. 1023, n. 32.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Reversed.

The facts are stated in the opinion of the court.

Guy C. Earl, W. H. Spaulding and Chaffee E. Hall, for Appellant.

Leon E. Gray, City Attorney, and Markell C. Baer, Assistant City Attorney, for Respondent.

WASTE, J.—The appellant brought an action against the City of Oakland to recover taxes alleged to have been illegally levied and collected, and paid under protest. A general demurrer to the complaint was interposed by the respondent City, and sustained. Plaintiff did not amend. Judgment was entered against it, and reversed on appeal, with instructions to the trial court to overrule the demurrer (*Great Western Power Co.* v. *City of Oakland*, 189 Cal. 649 [209 Pac. 553].) Thereupon the City answered. After trial by the court, sitting without a jury, judgment was rendered for the defendant, and plaintiff has appealed.

Plaintiff is a corporation engaged in the sale and transmission of electricity and belongs to the class of corporations set apart by the constitution (sec. 14 of art. XIII) for taxation solely by the state upon their operative properties on the basis of a percentage of gross receipts. [1] The tax by the state on the property of such companies used exclusively in the operation of their business in this state is in lieu of all other taxes, state, county, and municipal, except as provided in the section noted. During the month of March, 1920, appellant filed with the state board of equalization the report required by section 3665c of the Political Code, showing all of its property in the state which came under the definition of operative property. The report specified, among other things, all the property owned by appellant in the City of Oakland, and particularly specified and classified such property as operative and nonoperative. In the list of operative property, appellant included two steam generating plants and their equipment.

At the time of filing the report with the state board of equalization, appellant mailed to the assessor of the City

of Oakland, and the assessor received, several sheets of paper upon which had been mimeographed the same description of property that was included in the report of appellant to the state board of equalization. With these papers were certain maps descriptive of and showing the location of appellant's real property described in its report, among other property being the two steam generating plants and equipment referred to. The maps and papers were in the same inclosure with a letter, directed to the assessor, signed by the appellant by its tax agent, and reading as follows:

"Herewith please find statement of operative property of Great Western Power Company of California and California Electric Generating Company, within your jurisdiction.

"You will also find maps inclosed showing in red the operative property of said Companies within your jurisdiction.

"The said statement of property and said maps are identical with the statement and maps sent by us to the State Board of Equalization, covering your district, and we are sending the inclosed statement and maps to you at the request of the State Board of Equalization."

Notwithstanding the receipt by him of the papers, maps, and communication from the Power Company, the Oakland city assessor assessed the two steam-generating plants as nonoperative property, and on the assessment thus made the tax was levied and collected by the City over the protest of the appellant. The question on the appeal arises as to the proper construction of the requirement of section 3665c of the Political Code, which directs that a public utility company, making an annual report, shall, at the same time that it files its report with the state board of equalization, "furnish a duplicate of the report covering so much of said property as is located in any . . . municipality . . . to the assessor of the . . . city . . . in which such property is located." The board of equalization may require the filing in its office of maps descriptive of all the operative property of the company making the report, and may require that similar maps descriptive of the operative property within a municipality shall be filed in the assessor's office of the city in which the property is located. The contention in the court below hinged upon the proper

construction to be given to the word "duplicate" found in the requirement that at the time the company files its annual report with the board of equalization it shall also furnish a "duplicate" of the report covering so much of the property as is located in a municipality to the assessor of the city in which the property is located.

The trial court· found that the matter set forth on the sheets of paper comprising the "statement of property," sent by appellant to the assessor, did not identify the property, or state the purpose for which the papers were sent. It further found that they were not signed or sworn to by any person or officer connected with the plaintiff, or any person at all, and contained no information advising the assessor that the matter sent was a "duplicate" of the report required by the section of the code, and contained no information or statements charging the assessor with notice that the company was attempting to comply with the provisions of the code, or was claiming before the state board of equalization that the property described was operative property. The court therefore held that it was within the province of the city assessor to assess the property as "non-operative," and that the tax levied in pursuance of the assessment was properly levied and collected.

[2] The reason for the provision in section 3665c, *supra,* that the utility company must furnish the local assessor with information concerning the property within the jurisdiction of that official, is to be found in the succeeding section of the code (sec. 3666), which provides that if the assessor finds in the report of property in his municipality, claimed to be operative, any piece or parcel of property which he regards as nonoperative property, or partially operative and partially nonoperative, he shall, within thirty days after receiving such report, notify the state board of equalization thereof, and give the reasons for his opinion. A copy of the notice must be mailed to the company whose property is involved. [3] The state board of equalization, upon an investigation of the property and its use, and providing an agreement between the board or assessor and company as to the proper classification of the property cannot be reached, must provide for a hearing before it, at which hearing it must determine whether such property is operative or nonoperative. The decision of the board

in such matters is binding upon all parties, the state, the municipality and the company, unless set aside by a court of competent jurisdiction, and the assessor must assess the property according to such decision.

The report required by section 3665c, *supra*, must show in detail many matters which cannot, under any possible contention, interest the local assessor, or in any way relate to his action in determining whether or not he will assess property claimed by the company to be operative. Counsel for the respondent say in the City's brief that they do not contend that a complete duplicate of the entire report sent to the state board of equalization must be furnished to each local assessor, but that the duplicate of the report which is required shall be in all material respects like the original, but covering only so much of the property as is located in the municipality to which the duplicate is furnished. It should contain, it goes on to say, "at least so much of the information as will identify its purpose, disclose the names of the companies and its subsidiaries, the nature of their business, accurately describe the property in detail located in his jurisdiction, inform the assessor as to the claims of the taxpayer in respect to local property, and particularly charge him with the notice which the statute intends to give. It must be sufficient, in any event, to furnish the basis for an intelligent protest by him and hearing before the Board as provided in Section 3666 of said code."

The word "duplicate," as used by the legislature, respondent argues, must be given a strict and technical meaning, and, thus construed, it means neither a "copy," nor an "abstract," nor a "mimeographed copy," nor "excerpts from the report." Had the legislature, it says, intended to permit the use of a "copy," or an "abstract," or a "mimeographed copy," or "excerpts from the report," it could readily have said so. But, by the use of the words "duplicate of the report," it meant "something of much greater dignity and solemnity than the unidentified mimeograph copies of a mere part thereof sent to the assessor."

[4] The word "duplicate," it has been held, construing certain written instruments, means "that which is double, or twice made; an original instrument repeated. A document which is defined to be the copy of a thing; but, though

generally a copy, a duplicate differs from a mere copy in having all the validity of an original." (Burrill's Law Dictionary, 1859 ed., p. 526.) "The double of anything. A document which is essentially the same as some other instrument." (Bouvier's Law Dictionary. See, also, *Grand Lodge A. O. U. W.* v. *McFadden,* 213 Mo. 269, 287 [111 S. W. 1172]; *Grant* v. *Griffith,* 40 App. Div. 18 [56 N. Y. Supp. 791]; *Lorch* v. *Page,* 97 Conn. 66 [24 A. L. R. 1204, 1209, 115 Atl. 681]; 19 Cor. Jur., p. 836, cited by respondent.) Respondent argues that the statement sent to the Oakland city assessor was not a "duplicate" within the definition of these authorities, and, not being sworn to, or in any way verified, the assessor could not be expected to give serious consideration to any claim that certain property of the corporation described therein was operative property, and no duty was cast upon him by the law to investigate a frivolous unverified claim, or to ascertain its purpose. Of course, if the claim was frivolous no duty would be cast upon the assessor thereby; but we are not persuaded that such was the effect of the appellant's action in this case. The trial court does not find that the claim made ·by appellant was not made in good faith or that it was frivolous. No authorities, based on facts like those here considered, have been cited. There can, of course, be no quarrel with the "summing up" of the rule that "where the law requires the taxpayer's list to be verified by oath or affidavit, an unverified list is of no effect—it does not bind the assessors, and does not benefit the property owner." (37 Cyc., p. 994, g.) The cases cited by respondent (*Bessolo* v. *City of Los Angeles,* 176 Cal. 597 [169 Pac. 372]; *Henne* v. *Los Angeles County,* 129 Cal. 297 [61 Pac. 1081]; *Weyse* v. *Crawford,* 85 Cal. 196 [24 Pac. 735]) merely hold, on the point to which they are cited, that when the law requires certain demands or statements under oath the law must be complied with. Unless respondent is correct in its contention regarding the proper construction to be given the phrase "duplicate of the report," as used in the section, there is nothing in the law governing this matter that requires a sworn or verified statement to be furnished to the local assessor. [5] It was shown at the trial that the matter appearing on the eleven sheets of paper sent to the Oakland city assessor, descriptive of the appellant's opera-

tive property within the state, was first "typewritten on
stencil sheets and run off on the mimeograph . . . many
copies run off from each sheet, including one for the State
Board of Equalization and one for each local assessor," and
that the mimeograph copies so made are duplicates of the
same respective pages actually sent to the state board.
Substantially, if not literally, the appellant furnished the
city assessor with a duplicate of the report covering so
much of said property as was located in the City of Oak-
land. It was stipulated by the City that the sheets were
a copy of the report of appellant's operative properties sent
to the state board for the year 1920, and were attached to
the letter received by the assessor, and the trial court
found that the report filed with the state board "particu-
larly specified and classified" the property described as
operative and nonoperative, "and included the property
which it claimed was operative in said County of Alameda,
and described the same as follows, to wit: Great Western
Power Company of California Operative Property Gener-
ating Plants—Electric Mar. 12, 1920. County or City—
Description of the water sources, water rights, canals, ditches,
flumes, aqueducts, conduits, rights of way, dams, reservoirs,
power plants, land, buildings and other property constituting
part of the generating or central plant." Then follows a
description of various properties in Plumas and Butte Coun-
ties. On page 2, the property in Alameda County is set
forth, and this item occurs: "Two steam generating plants
of Great Western Power Company of California and equip-
ment, including oil tanks, being all of the personal property
of Great Western Power Company of California at its
plant in Realty Syndicate Building, Oakland, Alameda
County, California, and at its plant in St. Marks Hotel,
Oakland, Alameda County, California." That is the prop-
erty which appellant contends was illegally assessed.

[6] It does not appear to us that any further informa-
tion is required to be given to a local assessor, in the matter
of taxing the property of a public utility company, than
such information as will apprise him of the intention of
the company to claim that such property, or some part of
it, is operative, and to give him opportunity to make a claim
before the state board of equalization that, as a fact, the
property is nonoperative, and therefore within his jurisdiction

for assessing purposes. From the evidence in the record, we are convinced that the assessor of the respondent City was in position to, and must have derived sufficient information from the communication sent him by the appellant, accompanied as it was with the maps and other papers, to charge him with notice that the appellant was not only attempting to comply with the section of the code, but was actually claiming before the state board of equalization that the property described was operative property. The contrary view of the trial court, reflected in its findings, is not supported by the evidence. [7] The assessor was expressly told that the maps and papers were sent to him as a statement of operative property of the appellant within his jurisdiction, and that the maps showed the location of such property. He was also informed that the statement of property and the maps were identical with the statement and maps sent by the company to the state board of equalization covering his district, and that the statement and maps were sent to him at the request of the state board. It therefore became his duty, under section 3666 of the code, *supra,* to take steps to have the correctness of the claim made by the appellant heard and determined in the manner provided by the statute. Failing to do that, he must be held to have acquiesced in the claim of appellant that the two steam generating plants in the City of Oakland were, in fact, operative property. As he did not take the steps provided by law whereby he might have subjected the property in question to assessment for local purposes, if it were in fact not operative property of the appellant, he was without jurisdiction to make an assessment thereon. (*Pacific Electric Ry. Co.* v. *Rolkin,* 164 Cal. 154 [128 Pac. 20].) It follows, therefore, that the City was without jurisdiction to levy and collect any tax based upon such invalid assessment. This last conclusion we take now to be the law of the case, for it was in effect held on the former appeal in this case (*Great Western Power Co.* v. *City of Oakland, supra,* at pp. 657, 658) that the procedure prescribed by the code not having been followed, the attempt of the assessor to subject the property to local taxation was utterly void.

In view of the conclusion we have reached that the city assessor had no jurisdiction to make any assessment in the

premises, the question whether the two steam heating plants maintained by appellant in the City of Oakland in 1920, were, or were not, operative property within the meaning of the constitution becomes immaterial.

The judgment of the lower court is reversed.

Richards, J., Lawlor, J., Lennon, J., Seawell, J., and Myers, C. J., concurred.

SHENK, J., Dissenting.—I dissent. It is not disputed that the report to be filed with the state board of equalization must be signed and sworn to in accordance with the requirements of section 3665c of the Political Code. It seems to me that unless the report be under oath it does not constitute a report as required. When a duplicate of the report covering so much of the appellant's property as is located in the city is required to be filed with the local assessor it was undoubtedly the intention of the legislature that such report be attended with the same formality as the report filed with the state board of equalization. In other words, it was intended that the report to be filed with the city assessor should be the same in all respects, that is in duplicate, as the report filed with the state board except that it should include only such property as was located within the city. This construction is entirely in line with other provisions of our tax laws which require individuals to file statements of their property under oath with the local assessor such as is provided in section 3633 of the Political Code. The purpose of requiring a statement under oath is, of course, plain as affording assurance to the assessor that the taxpayer has included in his statement all of the property owned by him in the locality in which the particular assessor has jurisdiction.

It is alleged in the complaint that on the ninth day of March, 1920, the plaintiff filed with the state board of equalization a report as required by the statute setting forth, among other things, the description of the property operative and nonoperative located in the City of Oakland and owned by the plaintiff at the time designated. It is further alleged that on the tenth day of March, 1920, "a full, true and correct duplicate of said report so made to, and filed with, the said state board of equalization was furnished

to the assessor of said City of Oakland.'' The latter allegation was properly traversed in the answer and the court found said allegation to be untrue. The evidence was undisputed to the effect that the only documents submitted to the assessor of the City of Oakland were mimeographed copies of descriptions of property located in the said city and maps showing in red the location of said property. These documents were submitted to the city assessor with an ordinary letter of transmittal. The appellant does not claim, and it is not the fact, that the mimeographed sheets and maps were authenticated by the oath of any person whatsoever. Under these circumstances I think that the finding of the trial court to the effect that a *duplicate* of the report of appellant to the state board of equalization was not filed with the city assessor was not only justified but compelled by the evidence. In my opinion the judgment should be affirmed.