[Sac. No. 4802.  In Bank.—April 30, 1934.]

HOBART ESTATE COMPANY (a Corporation) et al., Appellants, v. JULIA WATERS, as Tax Collector, etc., Respondent.

Warren Olney, Jr., Allan P. Matthew, J. Richard Townsend and McCutchen, Olney, Mannon & Greene for Appellants.

Robert Brennan, M. W. Reed, Frank Karr, R. E. Wedekind, Leroy M. Edwards, Paul Overton, Thomas J. Straub, Guy C. Shoup, Roy V. Reppy and E. W. Cunningham as *Amici Curiae* on behalf of Appellants.

Virgil M. Airola, District Attorney, for Respondent.

C. Stanley Wood, City Attorney (Oakland), John W. Collier, Deputy City Attorney, and W. Coburn Cook, Special

Counsel for Alpine County, as *Amici Curiae* on Behalf of Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Third Appellate District. Upon a full consideration of the cause, we are satisfied that the opinion of Mr. Justice Plummer properly disposes of the issues, and we hereby adopt it as the opinion of this court. It reads as follows:

"In this proceeding the petitioners seek a writ of mandate from this court directing the respondent to accept the sum of $229.83 in full payment of taxes levied and assessed against property belonging to said petitioners situate in the county of Calaveras, and upon the assessment rolls of said county endorse the word 'Paid', indicating a full discharge and release of all taxes assessed against said petitioners.

"Omitting a number of the preliminary allegations of the petition not necessary to be considered herein, the petition states that on the 1st day of April, 1932, the petitioners filed with the state board of equalization of the state of California a report, as required by law, of its operative and nonoperative property situate in the county of Calaveras; that the time for filing said petition was extended from the 15th day of March, 1932, to and including the 1st day of April, 1932, by the state board of equalization pursuant to section 3667c of the Political Code; that at the time of filing the operative report by the petitioners herein, petitioners furnished a duplicate report to the assessor of Calaveras county, that no protest was filed against said operative report by the assessor of Calaveras county, within the time allowed by law; that after the time allowed by law for the filing of a protest by the assessor of any county where such operative property is situate, the assessor of Calaveras county did file a protest; that upon motion of the petitioners, the protest of the assessor of Calaveras county, so filed after the time allowed by law, was dismissed. The report further sets forth that during the year 1932 the assessor of Calaveras county assessed property shown in said report as operative property, property shown as used in a 'dual' capacity both in the carrying on of an operative and nonoperative business by the petitioners herein, and also upon property listed in said report as nonoperative.

"Alleging that the assessment placed upon the petitioners' property in Calaveras county is illegal, save and except as it was levied upon property listed as nonoperative property in said report, petitioners estimated the amount of taxes claimed to be legally chargeable against said property, and tendered the same to the tax collector of said county in the sum hereinbefore named. This amount was refused by the respondent as tax collector, who claimed that the total sum of $2,618.59 was the legal amount of taxes chargeable against the property of the petitioners herein.

"Upon this hearing it is contended by the petitioners that the failure of the assessor of Calaveras county to protest within the time allowed by law against the listing of property as set forth in the operative report made by the petitioners herein to the state board of equalization, precludes the assessing and levying of any tax upon property belonging to the petitioners, save and except that listed as nonoperative.

"On the part of respondent it is contended that the operative report filed by the petitioners is invalid in that it was filed after the time allowed by law, and also that the property used by the petitioners both in their operative and nonoperative enterprises (called by the parties to this action 'dual use property'), is subject only to taxes payable to Calaveras county. The petitioners maintain that 'dual use property' is taxable according to the percentage of uses made thereof; that is, if the properties is used to the extent of fifty per cent in its operative enterprises and fifty per cent in nonoperative activities, then and in that case the percentage of taxes payable to the state and payable to the county would be fifty per cent each.

"In making its tender of payment to the respondent there appears to be no segregation between the amount of taxes admitted to be due upon the nonoperative property and the estimated percentage of taxes due upon the property listed as 'dual use property'.

"With this summary before us, and without setting forth a description of the property, and without attempting any definition of operative and nonoperative property or 'dual use property', only one vital question is presented for our consideration. ▪ Before attempting to review the authorities upon what we consider the vital issue herein, it

may be stated that the cases called to our attention we think definitely settle the law that property scheduled as operative property in a report to the state board of equalization, where no protest is made within the time allowed by law, must be held for the particular year involved as operative property. To this effect are the following cases: *Great Western Power Co.* v. *City of Oakland,* 189 Cal. 649 [209 Pac. 553], and *Great Western Power Co.* v. *City of Oakland,* 196 Cal. 131 [236 Pac. 307].

■ "We may also add that even where a protest is filed, by the last paragraph of section 3666 of the Political Code, the decision of the state board of equalization as to what is operative and nonoperative property, and in what proportion operative and in what proportion nonoperative, is binding upon all parties, the state, the county, city and county, municipality or district, unless set aside by a court of competent jurisdiction.

■ "Without entering into a discussion of the power of the board of equalization to extend the time to file an operative report, we are of the opinion that section 3667c of the Political Code authorized the board of equalization to grant the extension allowed in this case. While the language of the section is somewhat ambiguous, a reading of the sections preceding leads to the conclusion that all reports required by the board upon which it must base its actions and conclusions, are included within the meaning of section 3667c of the Political Code.

"Other technical objections are made by the respondent, but as other issues involved in this case are determinative, we do not deem it necessary to enter into any discussion of technical objections.

"As we have stated, the report filed by the petitioners with the state board of equalization lists operative property, nonoperative property, and what is called 'dual used property', and it only remains for the court to determine whether, under the Constitution and the various sections of the Political Code, the assessor of Calaveras county could legally levy an assessment upon the property coming within the last classification. No tender of payment of taxes covering such property is alleged to have been made.

"Section 14 of article XIII of the Constitution, after setting forth the various kinds of property subject to taxa-

tion, including the properties operated in the sale of gas and electricity, uses the following language: 'and other property or any part thereof, used exclusively in the operation of their business in this state'.

"Subdivision 'A' of section 3665–B of the Political Code, after specifying what shall be taxed by the state, contains the following language: 'Used exclusively in the operation of the railroad business', etc. Following this, paragraph 2 of section 3665–C of the Political Code, defining under the head of 'operative property', uses the following words: 'Each of the companies mentioned in said section shall report in such detail as the state board of equalization shall prescribe, all of its property in the state which comes under the definition of "operative property", in section 3665–B of this code.' It may be here stated that the report does not set forth any severable portion of the property belonging to the petitioners as used in an operative capacity, as distinct from the extent to which such property is used in a nonoperative capacity. In other words, the 'dual use property' appears to be a unit so far as the report is concerned. There is no severable portion which can be said to be used exclusively for operative purposes, and no severable portion thereof which can be said to be used for nonoperative purposes. The property which we have herein designated for convenience as a 'unit' is simply used in a double capacity.

"While the petitioners rely upon the cases of *Great Western Power Co.* v. *City of Oakland,* 189 Cal. 649 [209 Pac. 553], and a case bearing the same title reported in 196 Cal. 131 [236 Pac. 307], and the case of *San Francisco-Oakland Terminal Rys.* v. *Johnson,* 210 Cal. 138 [291 Pac. 197], a careful reading of the two cases wherein the Great Western Power Company was the plaintiff, shows that they deal only with the conclusive effect of the decision of the state board of equalization as to what constitutes operative property, when set forth as such in the operative report, where no protest is made by the county assessor.

"In the case of *San Francisco-Oakland Terminal Rys.* v. *Johnson, supra,* an action was brought to recover taxes paid under protest based on the theory that the property was subject only to local taxation, the facts set forth in the opinion show that the uses made of the property, other than

as operative, were so negligible as not to be legally considered in the classification of the property, and that the uses made of the property were really in furtherance of the business carried on by the plaintiff in its operative capacity. In the instant case the circumstances are readily distinguishable from the Oakland cases. Here a separate and distinct business is conducted in which the property belonging to the plaintiffs and assessed by the assessor of Calaveras county, is used, and the portion of property not used in its local capacity for distribution purposes is used in the generation of electricity in a public utility capacity.

"The cases are numerous to the effect that to remove the property from local taxation and place it under the jurisdiction of the board of equalization for taxation purposes, the property must be used exclusively in the operation of a public utility, or of such a business as comes under the classification found in section 14 of article XIII of the Constitution.

"In *San Diego & Arizona Ry. Co.* v. *State Board of Equalization,* 165 Cal. 560 [132 Pac. 1044], the language of the court, after stating the facts involved therein, and referring to the act of the legislature as it then read, is as follows: 'By that subdivision it is provided that the part of the new road which is in actual use by any company is deemed to be in operation so as to justify its classification as operative property, as soon as it affords and renders service to the public for compensation. . . . The property also comes within the description of railroad property, taxable only for state purposes, as given in the Constitution. The provision is that all the specified companies shall annually pay a tax upon the property enumerated, or any part thereof used exclusively in the operation of their business in this State.'

"In *Lake Tahoe Ry. etc. Co.* v. *Roberts,* 168 Cal. 551 [143 Pac. 786, Ann. Cas. 1916E, 1196], the question involved was whether a steamer plying upon Lake Tahoe was subject to state or local taxation. It was there held that while the steamer, in connection with its agreement with the Southern Pacific Company, transported passengers, yet it was not engaged exclusively in such business. The court held that the property was subject only to local taxation. The language in the opinion is applicable here. We quote there-

from: 'The question thus presented is an extremely simple one, resting as it does, solely upon the meaning of the language of Section 14 of Article XIII of the Constitution, which declares, that based upon gross revenue railroad companies shall pay a tax to the state upon certain enumerated properties "and other property, or any part thereof, used exclusively in the operation of their business in this state". The brief statement of facts above set forth shows conclusively that the steamboats of the plaintiff were not used exclusively in their railroad business, and with equal conclusiveness it shows that no severable part of the steamers is used exclusively in the operation of the business, for manifestly a steamer in operation being a single, indivisible fabric, while it may be said that it is partly used for a given purpose, it cannot be said, as the Constitution declares, that "any part thereof" is so used.'

"As we have stated, no severable part of the unit fabric which is being used in this case in a 'dual' capacity is used exclusively in the generation of electricity, or in contributing in any way to the uses and purposes of a public utility. And, as further said in the opinion, as if in answer to the petitioners' contention herein as to a percentage assessment: 'To illustrate, if this substituted percentage tax based on revenue is to apply to a single piece of property partly used for railroad purposes, that indivisible portion of it not so partly used must be subject to local taxation by local assessors under the strict *ad valorem* tax, or it escapes taxation altogether. How shall a local assessor assess a portion of a steamboat? What portion shall he assess and what shall be the *ad valorem* value placed upon the portion which he does assess? All these would be practical questions under appellant's contention and would require answer at the hands of the law. The fact that these manifest contingencies have not been provided for by law is additional evidence that the framers of the Constitution meant what they said—namely, that only property used exclusively, or only a severable part of property used exclusively in the operation of the business of the company, should be included in the list of property whose sole and only tax is covered by the gross revenue percentage, and that the earnings of other properties not so exclusively used in whole or

in part are not an element in the admeasurement of this tax.'

"In *San Bernardino County* v. *State Board of Equalization*, 172 Cal. 76 [155 Pac. 458], the opinion in the Lake Tahoe case is reviewed and the view expressed that the words of the Constitution and the Political Code relieving public service corporations from local taxation must be given a fair and reasonable interpretation, yet there is nothing in the opinion in the San Bernardino case limiting, qualifying or in anywise restricting the scope of the opinion in the Lake Tahoe case. In the San Bernardino case it appears that the property in question (an icing plant) was used exclusively in icing cars used in the transportation of perishable products, which brings it within the definition of 'other property exclusively used' in connection with the public service business carried on by the corporation. Thus, it is not the kind of property, but the use of the property which determines its classification.

"In *Southern Pacific Co.* v. *Richardson*, 181 Cal. 280 [184 Pac. 3], the right of the state or the local authorities to levy a tax on ferry-boats operated between San Francisco and Oakland on what is known as the 'Creek Route' was involved. The contention of the state was that, as the boats were operated by a railroad company, the taxes should be levied by the state board of equalization. The court, however, held to the contrary, and points out distinctly that the other property used in the business of a public utility must be exclusively used for that purpose. It is further pointed out in the opinion that to hold such property exempt from local taxation would be to read into section 14 of article XIII of the Constitution words which are not there. It is also held that such a construction would limit the scope of section 1 of said article, wherein it is provided that all property shall be subject to local taxation according to its value.

"The opinion in the Richardson case, *supra,* is well summarized in the syllabus, from which we quote the following: 'The fact that subdivision A of Section 14 of Article XIII of the Constitution, which declares the duty to pay the taxes provided for in the opening paragraph begins with the phrase "all railroad companies", and in describing the kinds of property to be so taxed, closes with the phrase

"and other property or any part thereof used exclusively in the operation of their business in the State", is not to be taken as meaning that persons or corporations carrying on any business of a kind mentioned in the opening paragraph must be taxed in the same manner and for State purposes exclusively, upon property which may have a use exclusively in the operation of a separate public utility business in this State which otherwise would not be so taxable. But the only reasonable interpretation is that the phrase refers only to the kinds of business which are to be so taxable in the opening paragraph, and includes only the property which is used exclusively in the operation of such business.'

"In *Pullman Co.* v. *Richardson,* 185 Cal. 484 [197 Pac. 346], the case of *Lake Tahoe Ry. Co.* v. *Roberts* is approved, and in deciding the Pullman case the court quotes from the Tahoe case as follows: 'The fact that these manifest contingencies have not been provided for by law is additional evidence that the framers of the Constitution meant what they said, namely, that *only property* used *exclusively,* or only a *severable* part of property *used exclusively* in the operation of the business of the company should be included in the list of property whose sole and only tax is covered by the gross revenue percentage, and that the earnings of other property not so exclusively used in whole or in part are not an element in the admeasurement of this tax'. The court in the Pullman case takes occasion to italicize the salient portions found in this quotation.

"In the case of *San Francisco-Oakland Terminal Rys.* v. *Johnson, supra,* the Supreme Court reviews the cases which we have cited, but we find nothing therein which limits the language of the Tahoe case where a substantial use is made of the property for purposes which give it a distinctly local character. It is pointed out in the Johnson case that the steamers on Lake Tahoe derived at least 45 per cent of their revenue from purely local business. In the Johnson case it appears that the local business transacted by the property involved was less than one-half of one per cent. In other words, the local business was purely negligible, and did not justify the classification of the property as not being used exclusively in connection with the business of the public utility operating the same. The restaurants and

news-stands referred to in the Johnson case were used for the convenience of passengers who theretofore had been carried upon the railroads, and were necessarily connected with, and a part of the business of transporting the passengers carried by the railroad company. The facts in the Johnson case are readily distinguishable from the case at bar. Here the report, as we understand it, shows that a substantial use of the 'dual use property' is in the conduct of a purely local enterprise.

"In the case of *People* v. *Southern Pac. Co.*, 209 Cal. 578 [290 Pac. 25], it was the use of the property, and not the ownership thereof that determined its classification. The property involved in that case was railroad property, and property used exclusively in the conduct of such business. We find nothing in this case which limits the holding in any of the cases heretofore cited relative to the classification of property.

"In the recent case of *Southern California Tel. Co.* v. *County of Los Angeles,* 212 Cal. 121 [298 Pac. 9], the question of whether the property involved was or was not operative property or property used exclusively in the operation of a public utility was again before the court. The opinion in this case reviews all the cases which we have heretofore cited, and approves the following language found in the Tahoe case, to-wit: 'In *Lake Tahoe Railway Co.* v. *Roberts, supra,* the court discusses the method of interpreting these provisions, and points out that the words "used exclusively in the operation of their business" have a plain and obvious meaning. It was therefore held that property used only partially in the business was subject to local taxation.' The right of the county to tax property not used exclusively in the conduct of a public utility was upheld, as likewise, where the property has a 'dual use', in order for it to be subject to state taxation, the public utility use must relate to a severable portion of the property having such 'dual use'.

"The holding of all of the cases which we have cited is to the effect that the language of the Constitution specifying that the property or severable portion thereof, must be exclusively used by the public utility in order to exempt it from local taxation is. plain, definite and certain, and

requires no construction as contended for by the petitioners, but only an application to the circumstances presented for consideration and determination of whether the property is so exclusively used. ■ To hold that the property having such 'dual use' is subject to local taxation presents no question of violation of the 14th amendment of the United States Constitution, as contended for by the petitioners. The fact that the State Board of Equalization, upon a report including proceeds derived from 'dual use property', levies a tax accordingly, and the petitioners voluntarily pay such tax, in nowise presents the question of taking property without due process of law, nor does it bar the constitutional right of local authorities to levy and collect a tax upon such 'dual use property'.

■ ''The petitioners making such a report were under no legal obligations to pay any tax illegally levied. Some of the cases which we have cited and relied upon by the petitioners show that the remedies were afforded by paying the tax under protest and suing for the recovery thereafter. The failure of the petitioners to pay the state tax under protest does not relieve them from the obligation to pay any county tax warranted by the Constitution. ■ If there is a difference between the wording of the Constitution and some of the sections of the Political Code to which our attention has been called, the language of the Constitution must prevail.

■ ''As we read the operative report it shows upon its face property not used exclusively for operative purposes, upon which no tender of taxes was made, which renders it subject under the Constitution to local taxation, and it is therefore immaterial whether the assessor did or did not file a protest as to such property. It is only where property is claimed to be operative which the assessor asserts to be nonoperative, that circumstances are presented which render it necessary for the assessor to file a protest. If any of the property, or any severable portion thereof, exclusively used in an operative capacity by the petitioners as specified in the Constitution, or held as such under the sections of the Political Code referred to for the fiscal year of 1932–1933, by reason of the failure of the assessor to file a protest against the petitioners' operative report, is in-

cluded in the assessment, petitioners have their remedy by paying the tax under protest, and then bringing an action to recover the excess over and above the amount which they are legally obligated to pay. No protest being needed as to that part of the property listed by the petitioners in their report to the state board of equalization showing, as we have said, the legal right of the county to levy and collect a tax, it follows that the demurrer of the respondent should be sustained, and it is so ordered.''

The writ is denied.