[Civ. No. 5230. Third Appellate District.—October 10, 1934.]

HOBART ESTATE COMPANY (a Corporation) et al., Petitioners, v. STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA et al., Respondents.

J. Richard Townsend for Petitioners.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondents.

PLUMMER, J.—This cause is before us upon the application of the petitioners for a writ of mandate praying for an order of this court setting aside and annulling an assessment levied upon the properties of the petitioners for the fiscal year 1934–1935, and further directing the respondents to proceed with the levying of a tax in accordance with the prayer of the petition, and likewise directing refunds for and on account of excessive taxes levied and collected during the fiscal years 1932–1933 and 1933–1934.

For the purposes of the decision herein we will confine ourselves to discussion of the tax levy for the fiscal year 1934–1935, for the simple reason that the principles involved for the fiscal year just stated are likewise applicable to both of the preceding fiscal years.

The record before us shows that the assessment and taxes under consideration are based upon the gross receipts of the properties operated by the petitioners, including property described as "Exclusively Operative Property", and also "Dual Use Property". By these terms we mean property in the first class used exclusively in the business which gives to the state the right to make an assessment and levy a tax according to the gross revenue derived therefrom. By "Dual Use Property" we mean the property which is subject only to taxation by the counties in which the property is situate, in this case the counties of Alpine, Calaveras and Tuolumne being the respective counties entitled to assess and levy taxes upon the respective portions of the "Dual Use Property" therein situate.

On the twenty-eighth day of June, 1934, at the termination of a hearing had for such purpose, the State Board of Equalization made and entered an order determining the character of the property owned and operated by the petitioners for the purposes of taxation, and therein determined the property which should be classed as "Exclusively Operative Property" and likewise, the property which should be classed as "Dual Use Property". After making this classification the State Board of Equalization directed the assessors where the "Dual Use Property" is situate to make assessment of such property. Following the completion of such classification the State Board of Equalization proceeded to levy a tax of nine per cent upon the gross income of all the properties owned and operated by the petitioners, in-

cluding as well the income derived from "Exclusively Operative Property", and income derived from "Dual Use Property", the total receipts being the sum of $107,716.78, which, at nine per cent, by this method made, and by the State Board of Equalization the taxes alleged to be due the state, were fixed at the sum of $9,694.52.

It likewise appears from the record that the taxes which will be levied and placed upon properties belonging to the petitioners classified as "Dual Use Property" will be subject to a tax for the same fiscal year in the sum of $5,036.94. This calculation is based upon the assessment made upon the "Dual Use Property" belonging to the petitioners, for the fiscal year of 1933–1934, the actual amount of the assessment and tax levy not being fixed by the respective counties at the date of the filing of the petition herein.

We do not need to follow the allegations in the petition *seriatim*, for the simple reason that what we have said also is applicable to the various assessments and tax levies involved. We may also state that while the petition and the argument of counsel for the petitioners have covered a very wide field, the reply of the respondents is directed almost immediately to the points involved, and after a thorough study, we have concluded that the questions presented for determination are really simple, and involve no necessity of the citation of any great number of authorities.

Before considering the legal questions involved, a portion of the petitioners' brief presents, we think, a concrete statement which warrants the application of the rules set forth in subdivision "D" of section 3665(b) of the Political Code. We quote therefrom as follows: "In the present case it is impossible to say what part of the total gross receipts of petitioners' electric business is produced by the exclusively operative property, or what part by the dual use property. There is no means available for making an *actual* segregation of the total gross receipts between exclusively operative property and dual use property. Moreover, neither the Constitution nor the statutes prescribe any method of segregating the total gross receipts where, as here, such receipts are produced as a unit by the combined efforts of exclusively operative property and dual use property, and both classes of property are essential to the production of any gross receipts."

Paragraph (a) of section 14 of article XIII of the Constitution limits the state in the taxation of properties belonging to petitioners herein to the gross receipts of such property which, under the law, is known and classified as "Exclusively Operative Property". The law places within the domain of the counties the right to levy and collect taxes upon property described as "Dual Use Property". ■ It follows, therefore, as a logical conclusion, that if the state has no power or authority to levy an assessment upon, and tax "Dual Use Property", it has no power or authority to levy and collect a tax upon the income of such property. ■ We do not need to cite authorities to the point that a tax upon the income of property is, to all intents and purposes, a tax upon the property itself. Nor do we need to cite authorities to the effect that the law prohibits double taxation. ■ Thus, if the counties where the "Dual Use Property" is situate levy and collect the taxes thereon, and the state proceeds to levy and collect a tax upon the income derived from such property, there is in effect a double taxation of the "Dual Use Property". The questions before us do not involve the escape of property from taxation; nor is there any contention made that any of the properties belonging to the petitioners should be relieved from taxation, but only that an adjustment be made, to the intent and purpose that double taxation be not imposed.

In the case of *Hobart Estate Co. et al.* v. *Waters,* 72 Cal. App. Dec. 677, 1039 [18 Pac. (2d) 768]; Id., 220 Cal. 669 [32 Pac. (2d) 613] (opinion of this court adopted as the opinion of the Supreme Court), this court had occasion to collect and cite practically all of the leading cases having to do with "Exclusively Operative" and "Dual Use" properties, showing clearly the rights of the counties, and the right of the State Board of Equalization, to wit: That the counties and the State Board of Equalization should restrict their assessments and levies, first; by the counties to "Dual Use Property", and, second; by the State Board of Equalization to "Exclusively Operative Property". The application of the principles there discussed and the case cited lead unerringly to the conclusion that the right of taxation to "Exclusively Operative Property" means the right of taxation upon the gross income of "Exclusively Operative Property". Any other conclusion would simply

mean that the state might levy a tax upon the income of "Dual Use Property", and that the respective counties where the "Dual Use Property" is situate might levy a tax upon the property itself. This injustice is not contemplated by the Constitution, and we find nothing in any of the sections of the Political Code which would lead to or authorize any such conclusion. We think the opinion of the Hobart case, *supra,* is so complete in its citation of authorities that no further collection or analysis of cases having to do with "Exclusively Operative Property" or "Dual Use Property" need be set forth.

While the provisions of the Constitution to which we have referred restrict the power of taxation by the State Board of Equalization to the income derived from "Exclusively Operative Property", it does not specifically set forth the method of ascertaining the amount of the income derived from the operation of such property when the gross income of any company whose business is subject to state taxation is partly derived from the operation of "Dual Use Property". In this condition we think that the various sections of the Political Code describing "Operative Property", "Dual Use Property", "Property Non-operative", and the procedure to be followed in making a just levy, do not in anywise controvert the constitutional provision relative to levying a tax upon the income of "Exclusively Operative Property", but only provides a way for determining the amount of the gross income upon which the state tax may be levied, to wit: If the income from the respective properties cannot be segregated, then the gross income should be apportioned according to the value of the respective properties, as such properties bear to the entire gross receipts. As calculated by the petitioners this would give a gross income liable to state taxation for the fiscal year 1934–1935, of $57,369.96, upon which there would be due a tax payable for such period of $4,531.21. These figures are not controverted by the respondents, but we do not adopt them as the figures upon which the assessment is to be made, nor the amount of the assessment or taxes to be collected, but only as illustrative of the method of determining the tax to be levied upon the "Exclusively Operative Properties" belonging to the petitioners.

Counsel for respondents are correct in their assumption that in the decision in the Hobart case, *supra*, this court did not intend to invalidate or hold that the state was not entitled to levy and collect a tax upon the gross income of the "Exclusively Operative Properties" belonging to the respondents. The conclusion, however, cannot be avoided that where the income from "Exclusively Operative Property" and the income from "Dual Use Property" enter into and become component parts of the total gross revenue, double taxation cannot be imposed.

Section 3665 (a) of the Political Code empowers the State Board of Equalization, where double taxation would result in making a levy upon gross income, to reduce from the gross receipts such sum as might be found necessary to eliminate such double taxation. In the present case there is, and there can be no dispute that the method followed has resulted or would result in, double taxation as claimed by the petitioners. It therefore becomes the legal duty of the board to make the reduction authorized by this section whenever a levy upon the gross receipts results in such imposition.

It follows from what we have said that the levy made by the State Board of Equalization upon the gross income of the properties operated by the respondents, having included the income of properties not subject to state taxation, as well as the income of properties subject to state taxation, the levy so made must be annulled and set aside. And it is so ordered.

It is also further ordered that the State Board of Equalization proceed, in the event it finds it impossible to segregate the income derived from the "Exclusively Operative Properties" and the income derived from the "Dual Use Properties", to determine the ratio that the respective properties bear to the entire gross income, and assess and levy a tax upon the gross income found to be attributable to the "Exclusively Operative Properties".

This discussion demonstrates the right to credits and refunds to which petitioners may be entitled on account of double taxation which may be open for adjustment between the petitioners and the respondents, but, as to which we make no order, in view of the fact that the record shows suits in the superior court are now pending for the recovery

of sums alleged to have been collected on account of double taxation.

The petitioners will prepare a writ of mandate drawn in accordance with the views expressed in this opinion.

Pullen, P. J., and Thompson, J., concurred.